2018 OK 90

FILED SUPREME COURT STATE OF OKLAHOMA DEC 4 2018 JOHN D. HADDEN CLERK

FILED DEC - 6 2018 PATRICK KEANEY Clerk, U.S. District Court By _____ Deputy Clerk

17-cv-325-SPS

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

JERED BARRIOS, as the Personal )
Representative of the ESTATE OF )
RANDALL BARRIOS, deceased, )
 )
 )
Plaintiff, )
 )
 )
v. ) No. 117,103
 ) (comp. w/ No. 117,107
HASKELL COUNTY PUBLIC ) (cons. w/ No. 117,154))
FACILITIES AUTHORITY; BRIAN )
HALE, individually; KATRINA ) FOR OFFICIAL PUBLICATION
CHRISTY, individually and in her official )
capacity; SHERIFF TIM TURNER, in his )
official capacity; and DOES I through V, )
 )
Defendants. )

---

KELLY L. FOUTCH, administrator of the )
ESTATE OF RUSSELL TED FOUTCH, )
deceased, )
 )
Plaintiff, )
 )
v. ) No. 117,107
 ) (cons. w/ No. 117,154 &
TURN KEY HEALTH, LLC, d/b/a ) comp. w/ No. 117,103)
TURN KEY MEDICAL and TURN KEY; )
CREEK COUNTY PUBLIC FACILITIES )
AUTHORITY; JANE DOE NURSE I; )
JANE DOE NURSE II; and JOHN/JANE )

1

| DOES III–X, | ) |
| | ) |
| Defendants. | ) |

# CERTIFIED QUESTIONS FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA AND FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

¶ 0 The United States District Court for the Eastern District of Oklahoma and the United States District Court for the Northern District of Oklahoma certified several questions of state law to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011 §§ 1601–1611.

## CERTIFIED QUESTIONS ANSWERED

Andrew M. Casey, FOSHEE & YAFFE, Oklahoma City, Oklahoma, for Plaintiffs, Jered Barrios ex rel. Estate of Randall Barrios, deceased, and Kelly L. Foutch ex rel. Estate of Russell Ted Foutch, deceased.

Jamison C. Whitson, COLLINS, ZORN & WAGNER, P.C., Oklahoma City, Oklahoma, for Defendants Haskell County Public Facilities Authority, Katrina Christy, Sheriff Tim Turner, and Creek County Public Facilities Authority.

Randall J. Wood and Jeffrey C. Hendrickson, PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P., Oklahoma City, Oklahoma, for Defendant Brian Hale.

Anthony C. Winter, JOHNSON HANAN & VOSLER, Oklahoma City, Oklahoma, for Defendant Turn Key Health, LLC d/b/a Turn Key Medical and Turn Key.

Devan A. Pederson, OKLAHOMA OFFICE OF THE ATTORNEY GENERAL, Oklahoma City, Oklahoma, for Amicus Curiae, State of Oklahoma.

**Wyrick, J.:**

¶ 1 Two federal courts have certified to us the following questions:

1. The Governmental Tort Claims Act renders the State immune from any tort suit arising out of the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." Do Sections 7 and 9 of Article II of the Oklahoma Constitution nonetheless allow an inmate to bring a tort claim for denial of medical care?

2. If so, is the private cause of action to be recognized retrospectively?

¶ 2 Answering these questions requires us to determine whether we should extend our holding in *Bosh v. Cherokee County Governmental Building Authority*, 2013 OK 9, 305 P.3d 994, to include tort claims brought by inmates alleging violations of their rights to due process and to be free from cruel or unusual punishments. Because the Legislature responded to our decision in *Bosh* by amending the Governmental Tort Claims Act ("GTCA"), 51 O.S. §§ 151 *et seq.*, to clarify that the State's immunity from suit extended even to so-called "constitutional" torts,[1] we answer the first question "no." Accordingly, we do not reach the second question.

---

[1] *See* Act of April 21, 2014, ch. 77, §§ 1–2, 2014 O.S.L. 245, 249–50 (codified at 51 O.S.Supp.2014 §§ 152(14), 153(B)).

3

I

¶ 3 Russell Foutch and Randall Barrios died while incarcerated in county jails, Barrios by his own hand,[2] Foutch from complications related to pneumonia.[3] Their estates sued the respective jails, one sheriff, and various employees and healthcare contractors of those jails. Their claims included (1) federal civil rights claims under 42 U.S.C. § 1983 alleging violations of the Eighth and Fourteenth Amendments of the federal constitution, (2) negligence and wrongful death claims, (3) negligent conduct, training, hiring, and supervision claims, and (4) tort claims alleging violations of rights guaranteed by Sections 7 and 9 of Article II of the Oklahoma Constitution.[4]

¶ 4 In Foutch's case, the healthcare contractor filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Foutch's negligence, state constitutional, and § 1983 claims, while the jail filed a partial motion to dismiss all of Foutch's negligence and state constitutional claims. Both the healthcare contractor and the jail argued they were

---

[2] Order Certifying Questions of State Law to Sup. Ct. of Okla. [Doc. 54] at 2, *Barrios ex rel. Estate of Barrios v. Haskell Cty. Pub. Facilities Auth.*, No. 6:17-cv-00325-SPS (E.D. Okla. June 13, 2018). The underlying facts in this matter are set out in the certification orders from the federal courts. In answering a certified question, this Court does not presume facts outside those offered by the certification order. *Odom v. Penske Truck Leasing Co.*, 2018 OK 23, ¶ 1, 415 P.3d 521, 524. Although this Court will neither add nor delete such facts, we may consider uncontested facts supported by the record. *Id.* ¶ 1, 415 P.3d at 524.

[3] Compl. [Doc. 2] ¶ 9, at 3, *Foutch ex rel. Estate of Foutch v. Turn Key Health, LLC*, No. 4:17-cv-00431-GKF-JFJ (N.D. Okla. filed July 20, 2017).

[4] Compl. [Doc. 2] ¶¶ 24–73, at 6–17, *Barrios*, No. 6:17-cv-00325-SPS (E.D. Okla. filed Aug. 30, 2017); Order Certifying Questions of Law to the Sup. Ct. of Okla. [Doc. 49] at 2, *Foutch*, No 4:17-cv-00431-GKF-JFJ (N.D. Okla. June 27, 2018).

immune from suit under the Oklahoma GTCA and that Foutch had failed to raise a plausible claim for denial of medical care under Article II, Section 7 or 9 of the Oklahoma Constitution.[5] The trial court granted the jail's partial motion to dismiss and the healthcare contractor's motion to dismiss Foutch's state constitutional claims, but allowed Foutch's § 1983 claim to proceed. Both dismissals were premised on the district court's conclusion that this Court had never recognized a cause of action for denial of inmate medical care under Article II, Section 7 or 9 of the Oklahoma Constitution. Foutch subsequently filed a motion to reconsider and asked the district court to certify questions to this Court for guidance on whether such a cause of action exists. The trial court denied Foutch's motion to reconsider, but granted Foutch's motion to certify the questions.

¶ 5 In Barrios's case, the jail and its employees filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Barrios's negligent training/hiring/supervision and state

---

[5] Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25). *See* 51 O.S.Supp.2015 § 152(7)(b) ("As used in The Governmental Tort Claims Act: . . . 7. 'Employee' means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time basis. . . . b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed: . . . (5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections, [and] . . . (7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies . . . ."); *id.* §§ 153(A), 155(25). We have not been asked whether Turn Key Health, LLC or its staff are "employees" under section 152(7)(b), but have assumed they are for purposes of answering the questions certified to us.

constitutional claims. The former sheriff also filed a partial motion to dismiss the same claims, as well as Barrios's negligence and wrongful death claims. The trial court ordered the parties to show cause why the state immunity questions should not be certified to the Oklahoma Supreme Court. Barrios wanted the questions certified; the defendants did not. The trial court certified the questions.

¶ 6 Due to the commonality of the questions presented, we made the cases companion cases and now answer the certified questions in this single opinion.[6]

---

[6] This Court has the power to answer these certified questions of law. Such power exists so long as the certified questions are presented in accordance with the provisions of the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011 §§ 1601–1611. *Odom*, 2018 OK 23, ¶ 7, 415 P.3d at 525. This Court's discretionary power to answer is set out in section 1602, which provides:

> The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.

Accordingly, in assessing whether a certified federal question of law should be answered by this Court, both factors mentioned by section 1602 should be addressed: (1) Would the answer be dispositive of an issue in pending litigation in the certifying court? (2) Is there established and controlling law on the subject matter?

In this matter, there is no controlling Oklahoma precedent. In *Barrios*, the questions certified would be dispositive of Barrios's "constitutional" tort claims in the underlying federal action. In *Foutch*, however, the federal district court has already dismissed the relevant claims and has denied a motion to reconsider that ruling, which raises doubt about whether the questions from the *Foutch* case are certifiable. *See Cray v. Deloitte Haskins & Sells*, 1996 OK 102, ¶¶ 6, 8, 925 P.2d 60, 62 (declining to answer a certified federal question where, much like *Foutch*, the federal court had granted a dispositive motion, denied a motion to reconsider, and granted a motion to certify, because such actions indicated "the trial court [had] finalized its determination on the question" and because this Court did not wish "to afford appellate review of a ruling made by a federal judge under the guise of a certified question of law"). But even if the questions in *Foutch* are not properly presented, we will nonetheless answer the substantively similar questions in the *Barrios* case. Thus, we see no need to quibble with the certifiability of the *Foutch* questions.

II

A

¶ 7 We have long recognized that the Legislature has the final say in defining the scope of the State's sovereign immunity from suit.[7] Indeed, when the Court eliminated the State's judicially-created common law immunity from tort suits in *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153, we were careful to note our lack of power to withdraw immunity granted by legislative act.[8] A decision as to whether to allow tort suits is, after all, a decision as to whether the People's tax dollars should be used to pay money damages to those who successfully sue the state; so this recognition is consonant with our longstanding recognition of the Legislature's exclusive power to set the State's fiscal policy.[9]

---

[7] *Vanderpool v. State*, 1983 OK 82, ¶ 24, 672 P.2d 1153, 1157 ("[T]his Court is mindful of the oft-expressed view of this Court that if the doctrine of governmental immunity is to be totally abrogated, such should be done by the Legislature and not by the courts of this State." (citing *Ruble v. Dep't of Transp.*, 1983 OK 24, 660 P.2d 1049; *Spaulding v. State ex rel. Dep't of Transp.*, 1980 OK 145, 618 P.2d 397)); *see also Perry v. City of Norman*, 2014 OK 119, ¶13, 341 P.3d 689, 692 ("[T]he Court, in *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153, abrogated the doctrine [of governmental immunity] and acknowledged *the Legislature's right to enact sovereign immunity by statute*." (emphasis added)); *Schmidt v. Grady County*, 1997 OK 92, ¶ 6, 943 P.2d 595, 597 (same).

[8] 1983 OK 82, ¶ 25, 672 P.2d at 1157 ("Our decision is limited in its effect to the heretofore judicially created and recognized doctrine of governmental immunity and is not to be taken as in any way rendering ineffective any act of the Legislature in the area of governmental immunity whether presently in effect or hereafter passed.").

[9] *See, e.g., In re Application of Okla. Capitol Improvement Auth.*, 1998 OK 25, ¶ 5, 958 P.2d 759, 762 ("As a matter of fundamental law, the fiscal policy of this state is determined by the legislative department of government."); *Calvey v. Daxon*, 2000 OK 17, ¶ 21, 997 P.2d 164, 171 ("Except where it encounters a specific constitutional prohibition, the Legislature has the right and the responsibility to declare the fiscal policy of Oklahoma. This Court has no authority to consider the desirability, wisdom, or practicability of fiscal legislation. . . . Whether an act is wise or unwise,

¶ 8 The Legislature has oft exercised its power to define the scope of the State's immunity from suit. After *Vanderpool*, the Legislature enacted the GTCA and unequivocally abrogated *Vanderpool*'s common law decision with a statute declaring that "[t]he State of Oklahoma does hereby adopt the doctrine of sovereign immunity" from tort suits, while simultaneously waiving that immunity for certain tort claims.[10] Accordingly, in cases including tort claims against the State and state actors, the Court begins with the understanding that the State is statutorily immune from tort suit unless the Legislature has expressly waived that immunity. We thus look next to the text of the GTCA to determine whether its limited waivers of sovereign immunity from tort suit encompass the particular tort suit at issue.[11]

¶ 9 Analyzing a prior version of the GTCA, this Court did just that in *Bosh*, holding that the GTCA did not bar a tort claim alleging that excessive force was used against a pre-trial detainee in violation of the detainee's Article II, Section 30 right not to be unreasonably seized. We read the GTCA as stopping short of "immunizing

---

whether it is based on sound economic theory or whether it is the best means to achieve the desired result are matters for legislative determination." (footnote omitted)).

[10] The Governmental Tort Claims Act, ch. 226, § 3, 1984 O.S.L. 811, 813 (codified at 51 O.S.Supp.1984 § 152.1).

[11] *See, e.g., Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶¶ 16–20, 212 P.3d 1158, 1166–67 (analyzing 51 O.S. § 155(4) to determine whether a municipality may be held liable for the alleged negligence of its police officer); *Schmidt*, 1997 OK 92, ¶¶ 7–15, 943 P.2d at 597–98 (analyzing 51 O.S. § 155(6) to determine whether the county may be held liable for the alleged negligence of its deputy sheriff); *Nguyen v. State*, 1990 OK 21, ¶¶ 3–5, 8–9, 788 P.2d 962, 964–66 (analyzing 51 O.S. § 155(5) and (28) to determine whether the State may be held liable for injuries resulting from a state institution's release of a mental patient).

the state completely from all liability for violations of the constitutional rights of its citizens."[12] The text of the GTCA certainly didn't expressly include tort claims arising from alleged deprivations of constitutional rights—and we have always said that "[i]mmunity cannot be read into a legislative text that is silent, doubtful or ambiguous."[13] Accordingly, we recognized a common law tort remedy for claims arising from alleged violations of Article II, Section 30 rights.[14]

¶ 10 As it did after *Vanderpool*, the Legislature in 2014 responded to *Bosh* by amending the GTCA to specify that the State's immunity from suit extended even to torts arising from alleged deprivations of constitutional rights.[15] The Legislature first amended the definition of "tort" to include tort claims arising from alleged violations of constitutional duties:

---

[12] *Bosh*, 2013 OK 9, ¶ 23, 305 P.3d at 1001.

[13] *Gunn v. Consol. Rural Water & Sewer Dist. No. 1, Jefferson Cty.*, 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349 (citing *Nguyen*, 1990 OK 21, ¶ 1, 788 P.2d at 966–67 (Opala, V.C.J., concurring); *Ingram v. State*, 1990 OK 2, ¶ 9, 786 P.2d 77, 80; *Huff v. State*, 1988 OK 118, ¶ 6 n.19, 764 P.2d 183, 186 n.19; *Jarvis v. City of Stillwater*, 1983 OK 88, ¶ 10, 669 P.2d 1108, 1111). Additionally, by operation of the Supremacy Clause, the GTCA couldn't eliminate a state actor's liability under federal laws like 42 U.S.C. § 1983, *see Tiemann v. Tul-Ctr., Inc.*, 18 F.3d 851, 853 (10th Cir. 1994), nor did it affect claims that fail to implicate the state's sovereign immunity, such as those against state officials in their individual capacity and those seeking only prospective injunctive relief. *See, e.g., Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 436–37 (2004).

[14] Article II, Section 30 of the Oklahoma Constitution does not itself create a cause of action. Thus, the cause of action we recognized was not one created by the Oklahoma Constitution, but rather by the Court through its common law power to create a cause of action for the alleged deprivation of a constitutional right. *See Bosh*, 2013 OK 9, ¶ 8, 305 P.3d at 997 (citing *Ohio Casualty Insurance Co. v. Todd*, 1991 OK 54, 813 P.2d 508, for the proposition that "a court may recognize private causes of action").

[15] Act of April 21, 2014, ch. 77, §§ 1–2, 2014 O.S.L. 245, 249–50 (codified at 51 O.S.Supp.2015 §§ 152–153).

> "Tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law<u>, statute, the Constitution of the State of Oklahoma,</u> or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.[16]

It next made a similar addition to the section describing the scope of the State's tort liability:

> The liability of the state or political subdivision under ~~this act~~ <u>The Governmental Tort Claims Act</u> shall be exclusive and ~~in place of all other~~ <u>shall constitute the extent of tort</u> liability of the state, a political subdivision or employee ~~at~~ <u>arising from</u> common law<u>, statute, the Oklahoma Constitution,</u> or otherwise.[17]

And then lastly, it mandated that even if a court nonetheless recognized a constitutional tort, such a tort claim is subject to the GTCA's liability limits.[18]

## B

¶ 11 We must now determine whether, in spite of the legislative response described above, *Bosh*'s holding can be extended to allow inmates alleging violations of their Article II, Sections 7 and 9 rights to bring suit against the State for money damages.

---

[16] *Id.* sec. 1, § 152(14), 2014 O.S.L. at 249 (codified at 51 O.S.Supp.2015 § 152(14)).

[17] *Id.* sec. 2, § 153(B), 2014 O.S.L. at 250 (codified at 51 O.S.Supp.2015 § 153(B)).

[18] *Id.* In 2015, the Legislature again amended section 153 of the GTCA to specify that tort claims arising under the Oklahoma Constitution cannot name any state employee as a defendant unless the employee is alleged to have been acting outside the scope of their employment. Act of May 12, 2015, ch. 308, sec. 1, § 153(C), 2015 O.S.L. 1134, 1135 (codified at 51 O.S.Supp.2016 § 153(C)).

10

¶ 12 It cannot. The Legislature's amendment of the GTCA to specify that the GTCA applies even to tort suits alleging violations of constitutional rights was an exercise of the Legislature's long-recognized power to define the scope of the State's sovereign immunity, which forecloses our ability to expand the common law in a manner that would conflict with statutory law.[19] Thus, because these "constitutional" torts are now clearly "torts" governed by the GTCA, the GTCA's specific prohibition against tort suits arising out of the "operation or maintenance of any prison, jail or correctional facility" bars the claims at issue here.[20]

¶ 13 Even if not barred by sovereign immunity, however, it is doubtful that such claims would exist in the Oklahoma common law. Certainly nothing in the text of Article II, Sections 7 and 9 creates a tort cause of action for money damages as a remedy to vindicate violations of those rights, nor do these plaintiffs point to any common law tradition of the State paying money damages to the families of inmates

---

[19] *See Fuller v. Odom*, 1987 OK 64, ¶¶ 4–5, 741 P.2d 449, 451–52 ("The plain language of the Act expresses the Legislature's intent to abrogate any common law theories of recovery if a governmental tortfeasor may be liable. The Legislature has specifically abrogated any previously existing common law or statutory right of recovery for torts committed by a governmental entity or its employees while acting within the scope of their employment. In Oklahoma, statutes in derogation of the common law are to be liberally construed in order to promote their object. . . . The determination of legislative intent controls judicial statutory interpretation . . . ."); *cf. Lee v. Bueno*, 2016 OK 97, ¶ 51, 381 P.3d 736, 752 (discussing "the power of the Legislature to modify or abrogate the common law by statute" within the context of the interplay between 12 O.S. § 3009.1 and the Collateral Source Rule).

[20] 51 O.S.Supp.2015 § 155(25).

who take their own lives or succumb to illness while in prison.[21] These plaintiffs instead rely primarily on our decision in *Washington v. Barry,* 2002 OK 45, 55 P.3d 1036, where we assumed for purposes of our decision that Article II, Section 9 creates a cause of action for an inmate to bring a tort claim alleging violations of his or her right to be free from cruel or unusual punishments.[22] We resolved that case, however, on the basis that the inmate failed to adequately plead such a claim; so we have never squarely held that such a claim exists.[23]

---

[21] It also worth remembering that "a prisoner has a significantly greater burden to bear in establishing his right to a cause of action than does a person who is not incarcerated." *Washington v. Barry,* 2002 OK 45, ¶ 10, 55 P.3d 1036, 1039 (citing *Whitley v. Albers,* 475 U.S. 312 (1986)). Additionally, we have previously declined to create a new tort cause of action for an alleged constitutional violation where an alternative remedy existed to vindicate the alleged wrong. *See Perry,* 2014 OK 119, ¶ 19, 341 P.3d at 693. Here, 42 U.S.C. § 1983 provides citizens a private cause of action for the deprivation of their federal constitutional rights by a state actor. Since Article II, Sections 7 and 9 of the Oklahoma Constitution mirror the Fourteenth and Eighth Amendments to the United States Constitution, respectively, a violation of these Oklahoma state constitutional rights necessarily gives rise to a § 1983 claim. *See Phillips v. Wiseman,* 1993 OK 100, ¶ 9, 857 P.2d 50, 53; *Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.,* 986 F. Supp. 2d 1249, 1258 (W.D. Okla. 2013) ("It is well settled that '[a] § 1983 claim may be available, even though a state remedy is foreclosed by the Oklahoma Governmental Tort Claims Act.'" (alteration in original) (quoting *Tiemann,* 18 F.3d at 853)). Furthermore, an action against a state actor in their individual capacity seeking prospective injunctive relief could be maintained to prevent a continuing constitutional violation. *See Frew,* 540 U.S. at 436–37 (recognizing such an action for alleged violations of federal constitutional rights); *Gay Activists Alliance v. Bd. of Regents of Univ. of Okla.,* 1981 OK 162, ¶ 30, 638 P.2d 1116, 1123 ("It is important to note at this point that for the purpose of the injunction, the Board of Regents, as a body corporate, can be enjoined. *Gay Student Services v. Texas A & M University,* 612 F.2d 160 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). The Fifth Circuit, citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), stated that 'prospective injunctive relief is clearly allowed against state officials in their official capacities.' 612 F.2d at 165.").

[22] 2002 OK 45, ¶ 10, 55 P.3d at 1039.

[23] *Id.* ¶ 18, 55 P.3d at 1041–42; *see also Bosh,* 2013 OK 9, ¶ 21, 305 P.3d at 1001 (describing *Washington* as merely recognizing a "potential" cause of action).

¶ 14 The best support for the notion that violations of Article II, Section 9 rights should be vindicated through tort suits comes from the United States Supreme Court's decision in *Carlson v. Green*, 446 U.S. 14 (1980), where that Court held that Eighth Amendment rights could be vindicated through tort suits. In the very recent decision of *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), however, the United States Supreme Court declined to recognize a tort claim brought by detainees who alleged they were abused in violation of their Due Process Rights. In so doing, the *Ziglar* Court called the continuing validity of *Carlson* into grave doubt,[24] saying that it might decide the case differently today because "the arguments for recognizing implied causes of action for damages" had "los[t] their force."[25]

---

[24] *Ziglar*, 137 S. Ct. at 1856 ("[I]n light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today."). *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), is the federal precursor and analog to *Bosh*, where the United States Supreme Court recognized a money-damages claim against federal officers for violations of the Fourth Amendment. In the decade after *Bivens*, that Court recognized an implied cause of action in only two other cases involving other constitutional violations. *Davis v. Passman*, 442 U.S. 228 (1979) (holding that the Fifth Amendment Due Process Clause provides a damages remedy claim of gender discrimination); *Carlson*, 446 U.S. 14 (holding that the Eighth Amendment's Cruel and Unusual Punishment Clause provides a damages remedy for failure to provide adequate medical treatment). Those three cases—*Bivens*, *Davis*, and *Carlson*—are the lone instances in which the United States Supreme Court has approved of an implied damages remedy for constitutional violations. *Ziglar*, 137 S. Ct. at 1855. In the 47 years since *Bivens*, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). More tellingly, the Supreme Court has suggested that the continuing validity of *Bivens*, *Davis*, and *Carlson* turns in part on the lack of congressional disapproval of the decisions. *Id.* at 1856 (noting that "no congressional enactment has disapproved of these decisions").

[25] *Ziglar*, 137 S. Ct. at 1856.

¶ 15 "[W]hen the question is whether to recognize an implied cause of action to enforce a provision of the Constitution itself,"[26] the *Ziglar* Court said, "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against [government] officials in order to remedy a constitutional violation."[27] Because "claims against [government] officials often create substantial costs," including "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process," it is the Legislative Branch that has "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the [State] Government."[28] The Court noted that Congress had in a similar context specified that the Federal Tort Claims Act did not authorize any claim against a federal employee "which is brought for a violation of the Constitution,"[29] leading it to conclude that there, "Congress [had] . . . weighed those concerns in deciding not to substitute the Government as defendant in suits seeking damages for constitutional violations."[30]

---

[26] *Id.* at 1855.

[27] *Id.* at 1856.

[28] *Id.*

[29] *Id.* (citing 28 U.S.C. § 2679(b)(2)(A) (2012)).

[30] *Id.*

¶ 16 For all those reasons, the *Ziglar* Court "made clear" that expanding tort remedies for constitutional violations is now a "disfavored judicial activity."[31] Accordingly, "[w]hen a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a . . . statute, separation-of-powers principles are or should be central to the analysis. The question is 'who should decide' whether to provide for a damages remedy, [the Legislature] or the courts?"[32]

¶ 17 We agree that "[t]he answer most often will be" the Legislature, because "[w]hen an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.'"[33] Thus, because the Legislature amended the GTCA after our decision in *Bosh* to specify that the GTCA applies even to tort suits alleging violations of constitutional rights,[34] we conclude that the GTCA's specific prohibition against tort suits arising out of the "operation or maintenance of any prison, jail or correctional facility" is a legislative determination to which we must now defer.

---

[31] *Id.* at 1857 (internal quotation marks omitted).

[32] *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)).

[33] *Id.* (internal quotation marks omitted) (quoting *Bush*, 462 U.S. at 380).

[34] 51 O.S.Supp.2015 §§ 152(14), 153(B).

\* \* \*

¶ 18 In answer to the certified questions, we declare that (1) because the Legislature invoked the State's sovereign immunity as to constitutional torts via the GTCA, Sections 7 and 9 of Article II of the Oklahoma Constitution do not allow an inmate to bring a tort claim for denial of medical care, and (2) accordingly, the second question is moot.

**CERTIFIED QUESTIONS ANSWERED**

Combs, C.J., and Kauger, Winchester, Reif, and Wyrick, JJ., concur.

Gurich, V.C.J., and Edmondson (by separate writing) and Darby, JJ., concur in result.

Colbert, J., dissents.